# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

---

| | | |
|---|---|---|
| **JOHN K. HICKS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **No. 08-2410-STA** |
| **CONCORDE CAREER COLLEGE;** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Before the Court is Defendant Concorde Career College's Motion for Summary Judgment (D.E. # 65) filed on December 9, 2009. Plaintiff John K. Hicks filed a response in opposition to Defendant's Motion (D.E. # 81) on January 15, 2010.[1] Defendant has filed a reply brief in this matter and Plaintiff has filed a sur-reply (D.E. # 92). For the reasons set forth below, Defendant's Motion is **GRANTED**.

## BACKGROUND

The following facts are not in dispute for purposes of this Motion unless otherwise

---

[1] The Defendant initially filed a motion for summary judgment (D.E. # 23) on May 11, 2009. Plaintiff responded in opposition to Defendant's motion (D.E. # 39) on June 4, 2009. Plaintiff then amended his response on June 7, 2009 (D.E. # 41). On December 8, 2009 the Court denied without prejudice Defendant's motion for failure to comply with the Local Rules. More specifically, Defendant did not include a Statement of Undisputed Facts. Defendant then filed the instant motion before this Court on December 9, 2009 in compliance with the Local Rules. In Plaintiff's response (DE # 81) on January 15, 2010, the Plaintiff only filed a response to Defendant's statement of facts, and not his memorandum in opposition to Defendant's motion. On the same day, Plaintiff re-filed his original response to Defendant's Motion (D.E. # 82).

noted.[2]  Plaintiff John K. Hicks began working for Defendant Concorde Career College in

December 2005.  Def.'s Statement of Undisputed Facts, ¶ 2.  Defendant was not able to verify

Plaintiff's previous employment experience with any of his former managers.  *Id.*  However, the

Defendant contends that employment candidates' employment history and performance must be

verified by two former managers.  *Id.* at ¶ 1.  The Plaintiff asserts that verifiable relevant

experience is a post litigation creation of Defendant.

Defendant classified Plaintiff as an admission representative and set his initial salary at

$18.27/hour or $38,000/year.  *Id.* at  ¶ 3.  In January 2008, Defendant reclassified Plaintiff as an

Admissions Representative I based upon his then current salary.  *Id.*  Defendant contends that

Plaintiff never met the annual start goal, i.e. the number of students the admissions

representative enrolls minus the number of students who cancel, set for him as an admissions

representative.  *Id.* at ¶ 4.  The Plaintiff, however, disagrees.  Plaintiff contends that he met his

start numbers the first year he was employed by Defendant.[3]

Plaintiff never complained to anyone that he was being harassed. *Id.* at ¶ 5.  In or about

November 2008, during the course of discovery, Defendant learned that Plaintiff had taken

confidential Concorde documents from company property.  *Id.* at ¶ 6.  For instance, one of the

documents Plaintiff produced during discovery identified all of the admissions representatives by

name, date of hire, classification and salary.  *Id.* at ¶ 7.  This document was maintained in Cliff

---

[2] The Court notes that in Plaintiff's response to Defendant's Statement of Undisputed
Facts he commonly states that a fact is "undisputed" and then provides additional information.
The Court declines to consider this additional information.

[3] Plaintiff further contends that students were taken from him and given to other
representatives.

Custer's, the Director of Admissions, office and was not disseminated to the admissions representatives.  *Id.*

Defendant initiated an investigation to determine how Plaintiff obtained the confidential documents. *Id.* at ¶ 8.  Every admissions representative denied having any knowledge of the confidential documents or the unauthorized dissemination of such.  *Id.*  Plaintiff's employment was terminated on or about December 2008, for violating Defendant's policy pertaining to confidential information by removing confidential documents from campus without authorization to do so.  *Id.* at ¶ 9.  His employment was terminated one (1) year after he filed his first EEOC charge.  *Id.*

Defendant hired Tommy Harrison in December 2005 as a senior representative.  *Id.* at ¶10.  Harrison had fifteen (15) years of experience in recruiting, proprietary sales and management.  *Id.*  Custer was able to verify Harrison's prior experience.  *Id.*  As a senior representative, Harrison's starting salary was $20.19/hour or $42,000/year.  *Id.* at ¶ 11.

Lisa Nelson, an African American female, was hired on December 17, 2007.  *Id.* at ¶ 12.  Nelson had nine (9) years experience in proprietary (mortgage) sales industry, including management experience.  *Id.*  Custer was able to verify Nelson's experience and performance with her former managers, who gave Nelson positive recommendations.  *Id.*  She was classified as a senior representative.  *Id.*  Based upon her verifiable experience, Nelson's starting salary was set at $20.19/hour or $42,000/year.  *Id.* at ¶ 13.  In January 2008, Defendant reclassified Nelson as an Admissions Representative I based upon her current salary.  *Id.*  Nelson's annual start goal for 2008, her first full twelve months, was 136, and she obtained 135.  *Id.*

Nicole Brooks, an African American female, was hired on May 14, 2007.  *Id.* at ¶ 14.

3

Brooks had almost seven (7) years of relevant experience including student enrollment/retention, recruiting and management.  *Id*.  Custer was able to verify her experience and performance with her former managers, who gave Brooks positive recommendations.  *Id*.  She was classified as a senior representative.  *Id*.  Based upon her verifiable experience, Brooks' initial salary was set at $18.75/hour or $39,000.00.  *Id*. at ¶ 15.  In January 2008, Defendant reclassified Brooks as an Admissions Representative I based upon her then current salary.  *Id*.  Brooks obtained 126 starts her first twelve months on the job.  *Id*.  Her annual start goal for 2008 was 148 and she obtained 124.  *Id*.

Tina Frietch, a white female, was hired on March 12, 2007.  *Id*. at ¶ 16.  Frietch had one (1) year of experience in academic admissions and seven (7) years of sales experience.  *Id*.  Custer was able to verify Frietch's previous employment and performance with her former managers, who gave Frietch positive recommendations.  *Id*.  She was classified as a senior representative.  *Id*.  Based upon her verifiable experience, Frietch's starting salary was set at $18.75/hour or $39,000/year.  *Id*. at ¶ 17.  Frietch obtained 114 starts her first twelve months on the job.  *Id*.  Her 2008 annual goal was 145, but Frietch was terminated on or about April 30, 2008, for violating company policy.  *Id*.

Teresa Townsend, a white female, was hired as an admissions representative, on April 2, 2007.  *Id*. at ¶ 18.  Townsend had almost five (5) years of experience including experience in academic admissions and management.  *Id*.  Custer was able to verify Townsend's experience and performance with her former managers, who gave Townsend positive recommendations.  *Id*.  Based upon her verifiable experience, Townsend's starting salary was $18.75/hour or $39,000/year.  *Id*. at ¶ 19.  Townsend worked only eight months before she was terminated for

violating company policy.  *Id.*

Selena Medlin, a white female, was hired on June 16, 2008, as an Admissions Representative I.  *Id.* at ¶ 20.  Medlin had ten (10) years of experience in sales, including management experience.  *Id.*  Defendant was able to verify Medlin's experience and performance with her previous employers, who gave Medlin positive recommendations.  *Id.*  Medlin's starting salary was $19.23/hour or $42,000/year.  *Id.*  Plaintiff, however, contends that Medlin was told her experience did not count.  In the underlying action, Plaintiff asserts claims under the Equal Pay Act, Title VII of the Civil Rights Act of 1964 for unequal pay, racial discrimination and retaliation, and the False Claims Act.

In the instant Motion before the Court, the Defendant asserts that no genuine issues of material fact remain and thus summary judgment is appropriate in this case. First, the Defendant argues that Plaintiff can not make out a prima facie case of unequal pay because he can not establish that Defendant discriminates against male employees with respect to their pay. However, even if Plaintiff were able to make out his prima facie case, the Defendant asserts that any wage differential between male and female employees is a product of verifiable work experience and production, rather than sex.  Second, the Defendant argues that Plaintiff is unable to make out a prima facie case of unequal pay pursuant to Title VII because he can not show that Defendant intentionally discriminated against African American employees by paying white employees more.  Third, the Defendant argues that the Plaintiff can not make out a Title VII racially hostile work environment claim because he cannot establish that he was subjected to any severe or pervasive race based harassment or employer liability.  Finally, the Defendant contends that Plaintiff's Title VII racial discrimination and retaliation claims with respect to his

termination and suspension must fail because they were not properly raised in his Amended Complaint. However, even if the Court were to consider these claims, Defendant contends that it had a legitimate nondiscriminatory reason to suspend and terminate Plaintiff, unexplained possession of confidential company documents.

In response in opposition to Defendant's Motion, Plaintiff first contends that he has established his prima facie case for unequal pay under the Equal Pay Act by showing that several female Admissions Representative I's were paid more than him upon their hiring. Second, Plaintiff argues that he has established a prima facie case for unequal pay under Title VII by showing that Tommy Harrison, a similarly situated white employee, was paid more than him. Third, Plaintiff asserts that he has made out a claim for retaliation under Title VII.

In its reply brief, the Defendant again asserts that Plaintiff has failed to make out a prima facie case for equal pay under the Equal Pay Act or Title VII because he can not show that the Defendant discriminates against men or that white employees were paid more than African American employees. Additionally, the Defendant argues that Plaintiff has failed to make out a racially hostile work environment claim because he simply alleges he was told to "shut up" at a meeting. Finally, the Defendant asserts that Plaintiff's Title VII retaliation claim must fail because he has failed to establish his suspension was pretextual.

In his sur-reply, the Plaintiff again contends that he has stated a prima facie case for unequal pay under the Equal Pay Act. Plaintiff argues that Defendant's explanation for the differential between his pay and fellow female employees, i.e. a product of verifiable work experience, is a post litigation creation. Additionally, the Plaintiff argues that he has set forth a mixed motive claim under Title VII. Finally, the Plaintiff asserts that the proffered reason for his

termination, possession of confidential documents, is "laughable."

## **STANDARD OF REVIEW**

> Federal Rule of Civil Procedure 56(c) provides that a
>
> judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to
>
> interrogatories, and admissions on file, together with the affidavits, if any, show that
>
> there is no genuine issue as to any material fact and that the moving party is entitled
>
> to a judgment as a matter of law.[4]

In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party.[5]  When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[6]  It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[7]  These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[8]  When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so

---

[4] Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharms, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).

[5] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[6] *Celotex*, 477 U.S. at 324.

[7] *Matsushita*, 475 U.S. at 586.

[8] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

one-side that one party must prevail as a matter of law."[9]

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[10]  In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [her] asserted causes of action."[11]  Finally, the "judge may not make credibility determinations or weigh the evidence."[12]  Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."[13]

## ANALYSIS

### A.  Equal Pay Act

The Equal Pay Act ("EPA") prohibits employers from paying an employee at a rate less than that paid to an employee of the opposite sex for performing equal work.[14]  In order to establish a prima facie case of wage discrimination under the EPA, a plaintiff must show that an employer pays different wages to employees of opposite sexes "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed

---

[9] *Id*. at 251-52 (1989).

[10] *Celotex*, 477 U.S. at 322.

[11] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[12] *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

[13] Fed. R. Civ. P. 56(c); *see also Celotex*, 477 U.S. at 322 (1986).

[14] 29 U.S.C. § 206(d)(1)(2007).

under similar working conditions."[15]  Jobs need not be identical in order to be considered equal

work under the EPA.[16]  Whether a job is substantially equal for purposes of the EPA is

determined on a case-by-case basis and "resolved by an overall comparison of the work, not its

individual segments."[17]

Unlike the showing required under Title VII's disparate treatment theory, proof of

discriminatory intent is not required to establish a prima facie case under the EPA.[18]  Once the

plaintiff establishes a prima facie case, the defendant must prove that the wage differential is

justified under one of the four affirmative defenses set forth under § 206(d)(1) of the EPA: (1) a

seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality

of production; (4) any other factor other than sex.[19]  Because these are affirmative defenses, the

defendant bears the burden of proof.[20]  The plaintiff never bears the burden of persuasion

regarding the affirmative defenses.[21]  Once the defendant has met its burden of proving an

affirmative defense, the plaintiff bears the burden of producing evidence creating a triable issue

---

[15] *Beck-Wilson v. Principi*, 441 F.3d 353, 359 (6th Cir. 2006)(quoting *Corning Glass Works v. Brennan*, 417 U.S. 188, 195(1974)).

[16] *Beck-Wilson*, 441 F.3d at 359.

[17] *Id*. (quoting *Odomes v. Nucare, Inc*., 653 F.2d 246, 250 (6th Cir. 1981)).

[18] *Id*. at 360. (internal citations omitted).

[19] *Id*. (internal citations omitted).

[20] *Id*.

[21] *Id*.

of fact that the reasons proffered by defendant are pretextual.[22]

In the case at bar, the Defendant argues that the Plaintiff can not make out his prima facie case of unequal pay because he was not performing equal work to or paid less than his comparators. The Defendant notes that when female employees, Brooks, Frietch and Townsend, were hired they earned $18.75/hour whereas Plaintiff was earning $18.82/hour. Therefore, the Defendant asserts that no wage differential existed. Additionally, the Defendant contends that Plaintiff was not performing equal work with that of his female comparators because he was required to produce less starts, i.e. the number of students the admissions representatives enroll minus the number of students who cancel, per year. The Court, however, disagrees.

As noted above, to make a showing of equal work under the EPA, the jobs held by employees of opposite sexes need not be identical, rather, they need only be substantially equal. Here, the Plaintiff identifies five female admissions representatives as comparators in an effort to make this showing: Lisa Nelson, Nicole Brooks, Tina Frietch, Teresa Townsend, and Selena Medlin. All of these women were employed by Defendant as admissions representatives. Nelson, Brooks, and Frietch, however, were initially classified as senior representatives, whereas Plaintiff was classified as an admissions representative, a level below senior representative. Like Plaintiff, Townsend was hired as an admissions representative.

Prior to January 2008, Defendant had three classifications for admissions representatives:

---

[22] *Balmer v. HCA, Inc.*, 423 F.3d 606, 613 (6th Cir. 2005) The Sixth Circuit cited *Buntin v. Breathitt Cty Bd. of Educ.* for the proposition that the defendant always bears the burden of proving that its proffered reason is the true basis for the pay differential. The Equal Pay Act plaintiff bears the burden of producing evidence of pretext solely where a reasonable jury viewing the defendant's evidence could find only for the defendant. 134 F.3d 796, 800, n. (6th Cir. 1998).

admission representative, senior representative, and master representative.[23]  In 2008, Defendant implemented a new compensation plan and reclassified admissions representatives based on levels: I through VI.[24]  Current admissions representatives were reclassified based upon their current annual salary.[25]  Plaintiff, for instance, was reclassified as an Admissions Representative I.  Medlin was hired on June 16, 2008, as an Admissions Representative I.[26]

Despite these differing classifications, all admissions representatives are expected to enroll students.[27]  To do this, admissions representatives interview potential students, conduct campus tours, and conduct entrance exams.[28]  Each admissions representative's productivity is measured by the number of students which actually start the program each year, i.e. "starts."[29]  Admission representatives are given a goal for their production for the year, depending on their classification.[30]  The higher the classification, the higher the number of starts required per year.[31]

Defendant argues that Plaintiff was not performing equal work with Nelson or Brooks because both woman had higher annual start goals.  In Plaintiff's first year of employment, he

---

[23] Decl. Diana Hawkins-Jenks, ¶ 4.  Hawkins-Jenks is the Vice President of Human Resources at Concorde Career Colleges, Inc.  *Id*. at ¶ 1.

[24] *Id*. at ¶ 9.

[25] *Id*. at ¶ 10.

[26] *Id*. at ¶ 36.

[27] *Id*. at ¶ 7.

[28] Hicks Dep. 90:22-25 (Mar. 24, 2009).

[29] Decl. Hawkins-Jenks, ¶ 7.

[30] *Id*.

[31] *Id*.

was required to have 108 starts, whereas Nelson was required to have 139 and Brooks 153.[32] While it is true that Plaintiff's start goals were lower than some of his female comparators, at this stage the question for this Court is whether Plaintiff's job "required equal skill, effort, and responsibility" in comparison to performance of the female admission representative's jobs.

"Skill includes consideration of such factors as experience, training, education, and ability."[33] "It must be measured in terms of the performance requirements of the job."[34] "Effort is concerned with the measurement of the physical or mental exertion needed for the performance of the job."[35] "Responsibility is concerned with the degree of accountability required in the performance of the job, with emphasis on the importance of the job obligation."[36]

Here, the Defendant has not suggested that Plaintiff's job required less responsibility or effort than that of female admission representatives. Instead, Defendant focuses on the disparity in the number of starts Plaintiff was required to produce per year, as compared to his female comparators. Thus, in essence, Defendant asserts that Nelson and Brook's jobs required a higher level of skill, i.e. performance, than Plaintiff's.

While the Court agrees that Nelson and Brooks had higher start goals than Plaintiff in their first full year of employment, the Defendant does not indicate the start goals of all of Plaintiff's comparators. For instance, the Court is unclear as to what Frietch, Townsend, and

---

[32] The Court notes that Plaintiff's first full year of employment was in 2006, whereas Brooks and Nelson's was in 2008.

[33] 29 C.F.R. § 1620.15(a).

[34] *Id.*

[35] 29 C.F.R. § 1620.16(a).

[36] 29 C.F.R. § 1620.17(a).

Medlin's start goals were for their first year of employment.  Therefore, the Court can not determine whether female admissions representatives were required to perform at higher levels than Plaintiff.

However, even if Plaintiff's start goals were lower than all of the female admissions representatives, the Court still finds that Plaintiff was performing equal work to his female comparators.  As the Court previously noted, to make out his prima facie case, Plaintiff is only required to show that his work was substantially equal to the female admission representatives' jobs, not identical. Here, all admissions representatives had one fundamental task: enroll students.  While Plaintiff may have been required to enroll less students than his female counterparts, the tasks he performed to accomplish his start goals were the same his female admissions representatives performed.  Thus, taking the facts in the light most favorable to the Plaintiff, the Court finds that for purposes of this motion the Plaintiff, Nelson, Brooks, Frietch, Townsend, and Medlin were performing substantially equal work.

The Defendant also argues that no wage disparity existed between Plaintiff and female admissions representatives.  Defendant asserts that "[Plaintiff] admits that while they [Brooks, Frietch, and Townsend] were marking $18.75/hour, he was actually making $18.82/hour - more than both of these individuals- at the time those individuals were hired."  While it is true that Plaintiff was earning more per hour than Brooks, Frietch, and Townsend at the time they were hired, the basis of Plaintiff's equal pay claim is focused on initial salaries.  Plaintiff's initial salary was $18.27/hour.  Therefore, Plaintiff was paid a lower initial salary than that of Brooks, Frietch, and Townsend.  The Court, however, notes that Brooks and Frietch were senior representatives, a classification above Plaintiff.

The Defendant, however, omits the initial salaries of Plaintiffs other two comparators to advance its present argument: Nelson and Medlin. Nelson, a senior representative, earned a starting salary of $18.75/hour whereas Medlin, an Admissions Representative I, earned $19.23/hour.[37] Taking the facts in the light most favorable to the Plaintiff, the Court finds for purposes of this Motion that an inequality in pay existed between Plaintiff's initial salary and the initial salary of female admissions representatives. Plaintiff was paid a lower rate per hour than all of his female comparators at the time of their hire. Therefore, the Court finds that Plaintiff has made out his prima facie case for wage discrimination under the EPA.

However, not all differences in pay for equal work constitute violations of the Act. As noted above, once the plaintiff, such as here, has carried his burden of proving a prima facie case of wage discrimination, the burden shifts to the employer to establish by a preponderance of the evidence that the differential is due to: (1) a seniority system, (2) a merit system, (3) a system which measures earnings by quantity or quality of production; or (4) any other factor other than sex.

In the present case, the Defendant asserts that any pay inequality between Plaintiff and female admission representatives is based on factors other than sex, i.e. verifiable work experience and production. The Defendant contends that Nelson had nine (9) years of verifiable work experience, Brooks seven (7) years, Frietch eight (8) years, Townsend five (5) years, and Medlin ten (10) years.[38] In contrast, Defendant asserts Plaintiff had nine (9) months of verifiable

---

[37] Decl. Hawkins-Jenks, ¶ 36.

[38] *Id*. at ¶ 31-36. Medlin had management and sales experience with T-Mobile, Cingular Wireless, and Bellsouth Mobility. *Id*. at ¶ 36. Her experience with cellular phones was not counted in calculating her starting salary. *Id*.

work experience.[39]

Defendant admits that Plaintiff had an extensive work history prior to his employment with Concorde Career College.  The majority of Plaintiff's previous employers, however, were no longer in operation at the time Plaintiff sought employment at Concorde and thus Defendant could only verify nine months of Plaintiff's previous employment. More specifically, Defendant confirmed Plaintiff's employment as an admissions representative at Remington College with one of Plaintiff's fellow employees.[40]

According to Diana Hawkins-Jenks, Defendant's Vice President of Human Resources, Defendant has a practice of verifying applicant's previous employment with two former managers.[41]  Since Plaintiff's previous employment could not be verified by two former managers, Hawkins-Jenks initially denied Plaintiff's hiring.[42]  Hawkins-Jenks, however, approved Plaintiff's hiring after being pushed by Tommy Stewart, Campus President, to do so.[43] Defendant contends that based on its inability to verify Plaintiff's previous employment, it set Plaintiff's salary at $18.25/hour or $38,000/year.  Therefore, the Defendant contends that any inequality between the female admissions representative's salary and Plaintiff's was a product of

---

[39] *Id.* at ¶ 16.  According to the Defendant, Plaintiff provided two references to verify his employment history.  *Id.*  The first was a secretary at a church where Plaintiff preached and the second a fellow admissions representative at Remington College.  *Id.*

[40] *Id.*

[41] *Id.*

[42] *Id.* at ¶ 15.

[43] *Id.* at ¶ 16.  Plaintiff was recommended to Defendant by Judith Hunter, a master representative.  *Id.* at ¶ 15.  Based on this recommendation, Stewart pushed for Plaintiff's hiring despite his lack of manager verification.

15

Defendant's inability to verify Plaintiff's previous employment with management, not gender discrimination.

In opposition, the Plaintiff intimates that Defendant's reliance on verifiable experience is a post litigation creation.  To support this position, Plaintiff contends that Judith Hunter, the Master Representative who referred Plaintiff to Defendant, testified that "she had never heard the phrase 'relevant verifiable experience' [and] neither Stewart nor Custer . . . ever indicated to her that there was a problem with Hicks' references."[44]  Plaintiff, however, provides no citation to Hunter's testimony.  In fact, the excerpt Plaintiff has attached to his response in opposition to the instant motion contains no such testimony.[45]  Therefore, the Court declines to consider such unfounded allegations.

Plaintiff further contends that the "most telling indication of the defendant's position" on Plaintiff's relevant experience can be seen in Custer's summary of Plaintiff's experience.  Custer wrote "John has worked as both an admissions representative for an Allied Health College here in Memphis as well as a Director of Admissions for a truck driving school."[46]  Plaintiff, however, fails to expound upon the significance of Custer's summary in an attempt to refute his actual need for verifiable experience.  Therefore, the Court is at a loss as to what the "telling indication" of Custer's summary is.

---

[44] Pl.'s. Am. Resp. to Def.'s Mot. for Summ. J., 16.

[45] Attachment 6 to Docket Entry 81 is an excerpt of Judith Hunter's deposition testimony. Hunter's deposition, however, does not mention verifiable relevant experience.  Instead, the portion attached seems to focus on the confidential documents Plaintiff allegedly took from Custer's office.

[46] Custer's summary was noted on an Authorization Form.  *See* Attachment A to Plaintiff's Response to Summary Judgment at (DE # 41).

The Sixth Circuit has held that the "factor other than sex" defense does not include literally any other factor, but a factor that, at a minimum, was adopted for a legitimate business reason.[47]  Experience is an acceptable factor other than sex for purposes of the EPA.[48]  A new employee's prior salary also constitutes a factor other than sex as long as the employer does not rely solely on prior salary to justify a pay disparity.[49]

In the present case, the Defendant was able to verify the previous employment history of all five female admissions representatives, whereas Defendant was only able to verify nine months of Plaintiff's employment.

The Defendant asserts that differing levels of production is also a reason for the wage differential between Plaintiff and his female comparators.  As an initial matter, the Court notes that Brooks, and Frietch were both hired by Defendant as senior admissions representatives.  While it is true that these two female senior representatives made $18.75/hour as opposed to Plaintiff's initial $18.27/hour, Plaintiff was required to produce less "starts" per year.  Therefore, the Court finds for purposes of this motion that the Defendant has put forth sufficient evidence to show that the wage differential between Plaintiff and Brooks and Frietch was a product of "start" requirements, not gender discrimination.

Similarly, Nelson was hired as a senior representative at $20.19/hour or $42,000/year.  According to the Defendant, Nelson had five (5) years of highly relevant experience in mortgage

---

[47] *E.E.O.C. v. J.C. Penney Co., Inc.*, 843 F.2d 249, 253 (6th Cir. 1988)(holding that the legitimate business reason standard is the appropriate benchmark against which to measure the factor other than sex defense).

[48] *Balmer*, 423 F.3d at 612.

[49] *Id*.

sales and a previous salary of $44,000/year.[50]  Therefore, the Defendant contends that it set Nelson's salary in part on her previous experience and in part on her previous salary.  As noted above, both of these are permissible considerations.

Finally, Townsend and Medlin both possessed the same classification that Plaintiff did, admissions representative or Admissions Representative I.  The Defendant does not argue that the wage differential between these admissions representative's pay and Plaintiff's was based on production goals.  Instead, Defendant asserts that it merely considered their verifiable experience in setting their salaries.  As the Court previously noted, experience is an acceptable factor for purposes of the EPA.  Additionally, the Court finds that Defendant has a legitimate business reason to verify potential applicant's previous employment.  Therefore, the Court finds that Defendant has put forth sufficient evidence to prove that there is no genuine issue of material fact regarding whether the wage disparity among Plaintiff and Nelson, Brooks, Frietch, Townsend, and Medlin was due to a factor other than sex.

Plaintiff has presented no evidence to suggest that Defendant's proffered affirmative defense is pretextual.  As such, because Defendant has met its burden of proving that there is no genuine issue of material fact as to whether gender played a role in the alleged wage disparity, the Court **GRANTS** summary judgment to Defendant on Plaintiff Equal Pay Act claim.

### B. Title VII Claims

As an initial matter, the Court is not entirely clear which claims Plaintiff is asserting under Title VII of the Civil Rights Act of 1964.  Plaintiff briefs a mixed motive claim of racial discrimination, an equal pay claim, and a retaliation claim.  The Defendant additionally briefs a

---

[50] Decl. Hawkins-Jenks, ¶ 31.

racially hostile work environment claim.  The Plaintiff, however, appears to make no mention of

such a claim.  Plaintiff's Amended Complaint, however, does allege that "defendant has

continued to harass and debase the Plaintiff in the presence of his colleagues and theses acts are

continuing in nature and is creating a hostile work environment."[51]  For purposes of completion,

the Court will address all four potential claims.

### 1. Equal Pay

As an initial matter the Court is not entirely clear whether Plaintiff's Title VII equal pay

claim is based on race or gender discrimination.  In the instant Motion before the Court, the

Defendant briefs arguably the applicable standard for a race based claim.  The Plaintiff, in

response, does not set out a standard but rather argues he is similarly situated to Tommy

Harrison, a white senior representative.  Plaintiff's sur-reply makes no mention of his equal pay

claim pursuant to Title VII.[52]

In *Odomes v. Nucare, Inc.* the Sixth Circuit noted that the analysis of unequal pay for

equal work is essentially the same under both the Equal Pay Act and Title VII.[53]  Title VII,

however, requires a showing of discriminatory intent.[54] The affirmative defenses to wage

discrimination claims under the Equal Pay Act have also been incorporated into Title VII

---

[51] Am. Compl. ¶ 14.

[52] Plaintiff's sur-reply, however, does focus on his mixed motive claim pursuant to Title
VII.

[53] *Odomes*, 653 F.2d at 250.

[54] *Id*.

claims.[55]  An employer may therefore avoid liability under a Title VII wage discrimination claim if it can establish one or more of the four affirmative defenses in the EPA.[56]

In *Odomes*, a black nurse's aid brought equal pay claims asserting gender discrimination under both Title VII and the Equal Pay Act.[57]  This Court, however, is not clear whether the Sixth Circuit's statement in dicta, i.e. that the analysis of an equal pay claim is essentially the same under both the EPA and Title VII, applies to race based equal pay claims.  In this Circuit, the majority of cases asserting equal pay claims pursuant to the EPA and Title VII seem to be gender based, rather than a gender based EPA claim and a race based Title VII claim such as here.[58]

In the case at bar, it is undisputed that Plaintiff, an African American male, earned a starting salary of $18.27/hour or $38,000/year and received a pay increase in 2007 to $18.82/hour.  Plaintiff has identified Tommy Harrison, a white senior admissions representative, as a comparator employee.  According to the record, Harrison was paid a starting salary of $42,000 or $20.19/hour when he was first hired in 2005.  Harrison received a pay increase to $20.80/hour in 2006.[59]

------

[55] *E.E.O.C.*, 843 F.2d at 252. "The Bennett Amendment, the last sentence of section 703(h) of Title VII, was designed to incorporate the affirmative defenses to wage discrimination claims under the Equal Pay Act into Title VII."  *Id.*

[56] *Beck-Wilson*, 441 F.3d at 361.

[57] *Odomes,* 653 F.2d at 248-49.

[58] *See generally*, *Conti v. Universal Enter.*, Inc., No. 00-4538,2002 WL 31108827 at *4 (6th Cir. Sept. 20, 2002); *Odomes*, 653 F.2d at 250; *Hatton v. Hunt*, 780 F. Supp. 1157, 1167 (W.D. Tenn. 1991).

[59] Decl. Hawkins-Jenks, ¶ 28.

Defendant argues that Plaintiff cannot make out his claim because two master representatives, Judith Hunter and Ruby Hall, African American females, were the highest paid admissions representatives on the Memphis Campus.  In 2007, Hunter made $36.53/hour and Hall made $29.36/hour.  Although the Plaintiff does not dispute Hunter or Hall's salaries, the Court finds that Hunter and Hall's salaries are irrelevant to its analysis of the Plaintiff's equal pay claim.[60]  The relevant inquiry is whether Harrison was paid more than Plaintiff for performing a job requiring equal skill, effort, and responsibility, and under similar working conditions as Plaintiff's job.

Following the reasoning above, the Court finds that Plaintiff and Harrison performed substantially equal work.  Although Plaintiff was an admissions representative and Harrison a senior representative with a higher start goal, both engaged in substantially similar tasks to enroll students.  Additionally, it is undisputed that Plaintiff was paid less per hour than Harrison at all times of his employment.  As noted above, Title VII claims, unlike EPA claims, however require a showing of discriminatory intent.  From the record, the Court is not sure that Plaintiff has actually proffered evidence to indicate that the Defendant intentionally pays white employees more than African American employees.  In fact, Plaintiff does not even brief the issue in either his response to the instant motion or his sur-reply.[61]  Therefore, Plaintiff arguably has not even made out his prima facie case for equal pay under Title VII.

---

[60] The Defendant also provides Edna Hawkins, an African American female's, salary. For the reasons noted above, however, the Court finds Hawkins salary irrelevant as well.

[61] The Court notes that the Plaintiff does allege that he has offered direct evidence of defendant's discriminatory animus by his production of altered Concorde documents used to deflate or otherwise manipulate his performance in the context of his mixed motive claim pursuant to Title VII.

21

However, even if the Court were to find that Plaintiff has made out his prima facie case, the Defendant is entitled to summary judgment because it has established an affirmative defense that the wage differential is due to a factor other than race.  Harrison was a senior representative with a higher start goal per year than Plaintiff.[62]  Additionally, Harrison had fifteen (15) years of verifiable experience in recruiting, proprietary sales, and management and a doctorate degree, whereas Plaintiff only had nine months of verifiable experience.[63]  The Plaintiff has presented no evidence to suggest that Defendant's affirmative defense is pretextual.

In the alternative, if the analysis for a race based equal pay claim is more akin to the traditional race discrimination claim under Title VII, the Defendant is also entitled to summary judgment.[64]  To establish a prima facie case of race discrimination under Title VII, a plaintiff must show that he is (1) a member of a protected group, (2) was subject to an adverse employment action, (3)was qualified for the position, and (4) was replaced by a person outside the protected class or treated differently from similarly situated members of an unprotected class.[65]

The Court holds that the Plaintiff has failed to make this showing.  More specifically, for purposes of Title VII analysis as opposed to an EPA type analysis, the Court finds that Harrison is not similarly situated to Plaintiff.  To be deemed similarly situated, the individual with whom the plaintiff seeks to compare his treatment must have dealt with the same supervisor, have been

---

[62] Decl. Hawkins-Jenks, ¶ 28.

[63] *Id*.

[64] *See Tuck v. Hoover Co.*, No. 85-3748, 1986 WL 17748, table op., at 2 (6th Cir. 1986)(applying Title VII racial discrimination test to race based equal pay claim).

[65] *McDonnell Douglas Corp*. v. Green, 411 U.S. 792, 802 (1973).

subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.[66]

The Plaintiff asserts that he is similarly situated to Harrison for two reasons: (1) because he has thirteen (13) years of work experience and Harrison has fifteen (15) years of experience and (2) because their 2006 evaluations were "nearly identical." The Plaintiff, however, omits the fact that Harrison was a senior representative, i.e. a level above him, and thus subject to much higher production goals.

According to the record, Plaintiff, an admissions representative, was subject to lower production standards, i.e. starts, than Harrison, a senior representative. In 2006, Plaintiff was required to produce 108 starts, whereas Harrison was required to produce 120. In 2007, Plaintiff was required to produce 152 starts, whereas Harrison was required to produce 185.[67] Based on these varying levels of start requirements, the Court finds that Plaintiff and Harrison were not subject to the same standards and as such are not similarly situated for purposes of Title VII. Therefore, the Defendant is entitled to summary judgment as to Plaintiff's race based equal pay claim under a Title VII as well.

Finally, if Plaintiff actually intended to assert a gender based equal pay claim under Title VII, the Defendant is entitled to summary judgment as to this claim as well for the same reasons the Defendant is entitled to summary judgment as to Plaintiff's race based equal pay claim under an EPA analysis.

---

[66] *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992).

[67] Decl. Hawkins-Jenks, ¶¶17,19, 29.

Therefore, Defendant's Motion as to Plaintiff's Title VII equal pay claim is **GRANTED**.

*2. Mixed Motive Claim*

The Sixth Circuit held in *White v. Baxter* that the McDonnell Douglas burden-shifting framework does not apply to mixed-motive race-discrimination claims.[68]  A mixed-motive discrimination claim survives summary judgment if "there are any genuine issues of material fact concerning [Defendant's] motivation for its adverse employment decision."[69]  The burden "is not onerous and should preclude sending the case to the jury only where the record is devoid of evidence that could reasonably be construed to support [Plaintiff's] claim."[70]

As indicated in the above framework, in order to present a mixed-motive claim, under Title VII, a plaintiff must demonstrate that he has suffered an "adverse employment action."[71] An adverse employment action is an action by the employer that "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."[72]

In the case at bar, the Court first notes that the Plaintiff seems to assert a mixed-motive race-discrimination claim in his response to the instant Motion pursuant to 42 U.S.C. § 2000e-2(m).  The Plaintiff did not specifically mention this claim in his Amended Complaint.  The

---

[68] *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 401-02 (6th Cir. 2008).

[69] *White*, 533 F.3d at 402.

[70] *Id.* at 400.

[71] See *White v. Burlington N. & Santa Fe Ry.*, 364 F.3d 789, 795 (6th Cir. 2004)(en banc), *aff'd in relevant part*, 548 U.S. 53 (2006).

[72] *White*, 533 F.3d at 402 (quoting *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998)).

Plaintiff did, however, generally assert a racial discrimination claim under 42 U.S.C. § 2000 et. seq.[73]  Therefore, the Defendant was arguably put on notice of this claim.  The Court only draws attention to this point because the Defendant notes in its reply brief that "Defendant is perplexed by Plaintiff's reference to the "theory of mixed motive."  Defendant did not raise the "mixed motive" affirmative defense in its Motion for Summary Judgment, and thus, the analysis applicable to such does not apply here."  Despite the Defendant's contentions to the contrary, Plaintiff may permissibly assert a mixed-motive claim under Title VII.

Although Plaintiff briefs the applicable mixed-motive standard, he does not specifically identify the adverse action he suffered in the context of this claim.  Despite this fact, the Plaintiff undisputedly suffered several adverse employment actions.  For instance, Plaintiff was suspended on or around November 2008 when the Defendant learned that he removed confidential personnel documentation from campus.  After conducting an investigation into how Plaintiff obtained this document, Defendant terminated Plaintiff.  Suspension and termination are undisputedly considered adverse actions in this Circuit.[74]  Therefore, for purposes of this Motion, Plaintiff can prevail on his mixed-motive claim if he proffers evidence to show that race was a motivating factor in these actions.  The Plaintiff has not done so.

Plaintiff makes various allegations.  For instance, he asserts that: (1) students were taken from him and given to other representatives, (2) Stewart, Custer, and Lori Spencer tried to coax a white student into saying he forced her into an unwanted program, (3) Lori Spencer asked an African American female colleague if she wanted her to tell Plaintiff to stop harassing her, (4)

---

[73] Am. Compl. ¶ 1.

[74] *See generally Lindsay v. Yates*, 578 F.3d 407, 418 (6th Cir. 2009).

he was told he could not go to the sundry for breakfast, and (5) he was yelled at and told to shut up in two meetings.  Despite these extensive allegations, however, Plaintiff fails to brief how these allegations support his contention that his suspension or termination were racially motivated, and the Court fails to see how they do.  Plaintiff's suspension and termination were based on his removal of confidential personnel documentation.  Plaintiff admitted as much in his response to Defendant's statement of undisputed facts.[75]  As such, the Court finds that although the burden to establish a mixed-motive discrimination claim is not onerous, Plaintiff has not "produced evidence from which a jury could logically infer" that his termination was motivated in part by race.  Defendant's Motion as to this claim is **GRANTED**.

*3. Retaliation*

In order to make out a prima facie case of retaliation under Title VII, Plaintiff must demonstrate (1) that he engaged in protected conduct; (2) that Defendant had knowledge of his protected activity; (3) that Defendant took an adverse employment action against him; and (4) that there was a causal connection between the protected activity and the adverse employment action.[76]

Plaintiff's protected activity occurred in April 2007 when he filed an EEO complaint and in June 2008 when he filed a lawsuit against Defendant in federal court.  Defendant does not dispute that it had notice of both filings.  Plaintiff suffered his initial adverse action when he was

---

[75] Defendant stated in paragraph 6 of his statement of facts "Concorde learned that Plaintiff had taken confidential Concorde documents from company property." Plaintiff's response was "undisputed." Plaintiff then goes on to provide additional information about how the documents were placed in his office.  The Court, however, declines to consider this information as Plaintiff has already undisputedly admitted the content of the statement.

[76] *Upshaw v. Ford Motor Co*., 576 F.3d 576, 588 (6th Cir. 2009).

26

placed on paid suspension in November 2008, and his final adverse action when he was

terminated in December 2008.  The Court finds for purposes of this Motion that there were

approximately five (5) months between Plaintiff's latest protected activity, June 2008 lawsuit,

and Plaintiff's first adverse action, November 2008 suspension.  Therefore, the question for this

Court is whether there was a casual connection between the Plaintiff's protected activity and his

adverse action.

Causation can be proven indirectly through circumstantial evidence such as suspicious

timing.[77]  The burden at this stage is minimal; all the plaintiff must do is put forth some credible

evidence that enables the court to deduce that there is a causal connection between the protected

activity and retaliatory action.[78]  The Sixth Circuit has found that temporal proximity between an

assertion of Title VII rights and a materially adverse action, is sufficient to establish the causal

connection element of a retaliation claim "[w]here an adverse employment action occurs very

*close* in time after an employer learns of a protected activity."[79]  Where the nexus is not "very

close" the Sixth Circuit has declined to find a causal connection based on temporal proximity

alone.[80]  For instance, the Sixth Circuit has rarely found a temporal span of more than six (6)

months sufficient evidence of a causal connection.[81]  More importantly, temporal proximity

without additional circumstantial evidence of discriminatory intent is not enough to establish a

---

[77] *Lindsey*, 578 F.3d at 418.

[78] *Upshaw*, 576 F.3d at 588 (citing *E.E.O.C. v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997)).

[79] *Id*. (quoting *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 523 (6th Cir. 2008)).

[80] *Id*.

[81] *DiCarlo v. Potter*, 358 F.3d 408, 420 (6th Cir. 2004).

causal connection.

As noted above, there were five months between Plaintiff's latest protected activity, filing of June 2008 lawsuit, and his adverse action, suspension in November 2008. Since the Sixth Circuit commonly recognizes time periods under six months as sufficient to establish temporal proximity, the Plaintiff has likely met this element. Plaintiff, however, is also required to show additional circumstantial evidence of discriminatory intent. In this vein, the Plaintiff has made various allegations which he describes as retaliatory acts. The majority of these allegations, however, fall outside of the June 2008 through November 2008 window and others are not dated. For instance, Plaintiff alleges he was forbidden to eat at the sundry or in his office but does not specify when these restrictions were made. Therefore, it is not clear to the Court whether Plaintiff can make out his prima facie case.

The Court, however, need not reach this issue. Even if Plaintiff could make out his prima facie case, Defendant had a legitimate, nondiscriminatory reason for its decision to suspend and ultimately terminate Plaintiff, his obtainment of a confidential personnel document.

Once the defendant has proffered a legitimate nondiscriminatory reason for its actions, such as here, the plaintiff has the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.[82] To demonstrate pretext, a plaintiff may show that the defendant's proffered reason (1) had no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct.[83]

---

[82] *Carter v. Univ. of Toledo*, 349 F.3d 260, 273 (6th Cir. 2003).

[83] *Id*.

In the present case, the Plaintiff vaguely asserts that Defendant's proffered reason for his suspension and ultimate termination was pretextual.[84]  In fact, he does not even brief the applicable standard.  Therefore, the Court is not entirely clear how Plaintiff contends Defendant's proffered reason was pretextual.  However, it seems to the Court that the Plaintiff does not dispute that the basis for his suspension and termination were a result of his acquisition of a confidential document or that this document motivated his suspension and termination.  For instance, the Plaintiff testified that he was suspended "because of the document I had given to my attorney."[85]  Additionally, the Court finds that Plaintiff's production of a confidential document was sufficient to warrant termination or suspension.

Since Plaintiff has failed to proffer evidence to suggest that Defendant's proffered reasons for his suspension and subsequent termination were pretextual, the Court finds that Defendant is entitled to summary judgment as to this claim. Therefore, Defendant's Motion as to Plaintiff's Title VII retaliation claim is **GRANTED**.

### 4. Hostile Work Environment

As noted above, Plaintiff asserts in his Amended Complaint that "the defendant has continued to harass and debase [me] in the presence of . . . colleagues and these acts are continuing in nature and is creating a *hostile work environment*."[86]  In the instant Motion before the Court, the Defendant briefed the applicable standard for a racially hostile work

---

[84] The Court notes in his sur-reply, Plaintiff asserts "a jury could further find that defendant's proffered reason for terminating the Plaintiff based upon a breach of trust, in light of defendant's actions, is indeed laughable."

[85] Hicks Dep. 234:7-10.  Plaintiff was asked "why do you think you were suspended?" Plaintiff responded "because of the document I had given to my attorney."

[86] Am. Compl. ¶ 14. (emphasis added).

environment.[87]  The Plaintiff, however, failed to do the same in either his response to the instant

Motion or his sur-reply.  As such, the Court will decline to reach the merits of this claim.

Therefore, Defendant's Motion as to this claim is **GRANTED**.

### C. False Claims Act

Finally, in his Amended Complaint Plaintiff asserts a retaliation claim under the False

Claims Act.[88]  Plaintiff, however, fails to brief the applicable standard in either his response to

the instant Motion or his sur-reply.  Therefore, the Court also declines to reach the merits of this

claim.  As such, Defendant's Motion as to this claim is **GRANTED**.

## CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment is

**GRANTED**.

**IT IS SO ORDERED**.

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: February 26th, 2010.

---

[87] The Court notes to establish a prima facie case of a racially hostile work environment, a plaintiff must demonstrate that (1) he was a member of a protected class; (2) he was subjected to unwelcome racial harassment; (3) the harassment was based on race; (4) the harassment unreasonably interfered with his work performance by creating an intimidating, hostile, or offensive work environment; and (5) the employer is liable.  *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 515 (6th Cir. 2009).

[88] Am. Compl. ¶ 19.